EDMUND G. BROWN JR.
Attorney General of California
DANE R. GILLETTE
Chief Assistant Attorney General
PAMELA C. HAMANAKA
Senior Assistant Attorney General
KENNETH C. BYRNE
Supervising Deputy Attorney General
DAVID ZARMI
Deputy Attorney General
State Bar No. 245636
 300 South Spring Street, Suite 1702
 Los Angeles, CA  90013
 Telephone:  (213) 576-1336
 Fax:  (213) 897-6496
 E-mail:  DocektingLAAWT@doj.ca.gov
*Attorneys for Respondent*

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **FRANK E. JONES,** | CV 09-8819 JVS(JC) |
| Petitioner, | **MOTION TO DISMISS PETITION FOR HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES** |
| **v.** | |
| **GEORGE NEOTTI,** | |
| Respondent. | The Honorable Jacqueline Chooljian |

# TABLE OF CONTENTS

**Page**

Memorandum Of Points And Authorities ................................................................ 2

Procedural History ................................................................................................... 2

Argument ................................................................................................................... 5

I.    The Petition should be dismissed because it is time-barred by the one-year period of limitation set forth in 28 U.S.C. § 2244(d) ...... 5

     A.    The Petition is time-barred, even with the benefit of tolling for one of the habeas petitions filed in state court ......... 5

     B.    Petitioner is not entitled to a later start date for the statute of limitations ................................................................................ 7

     C.    There is no actual innocence exception to the statute of limitations; but even if there were, Petitioner has failed to make the requisite showing of actual innocence ..................... 10

         1.    Actual innocence is not an exception to the AEDPA statute of limitations ....................................................... 10

         2.    The majority of circuits have held that actual innocence is not an exception to the statute of limitations ................................................................................ 12

         3.    The minority rule ......................................................... 14

         4.    The majority rule states the better position ................... 16

         5.    In any case, Petitioner has failed to meet the *Schlup* standard ....................................................................... 19

Conclusion .............................................................................................................. 23

# TABLE OF AUTHORITIES

**Page**

CASES

*Alcox v. Hartley*
    614 F. Supp. 2d 1064 (C.D. Cal. 2009)........................................................ 9

*Araujo v. Chandler*
    435 F.3d 678 (7th Cir. 2005)................................................................ 12

*Bousley v. United States*
    523 U.S. 614, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) ..................... 20

*Bowen v. Roe*
    188 F.3d 1157 (9th Cir. 1999)............................................................... 6

*Bryant v. Arizona Attorney General*
    499 F.3d 1056 (9th Cir. 2007).............................................................. 17

*Calderon v. Thompson*
    523 U.S. 538, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998) ..................... 20

*Carey v. Saffold*
    536 U.S. 214, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002) .................. 5, 9

*Chaffer v. Prosper*
    592 F.3d 1046 (9th Cir. 2010)............................................................ 6, 7

*Coley v. Gonzales*
    55 F.3d 1385 (9th Cir. 1995).............................................................. 11

*Cousin v. Lensing*
    310 F.3d 843 (5th Cir. 2002)........................................................... 12, 19

*David v. Hall*
    318 F.3d 343 (1st Cir. 2003) .....................................................passim

*Duncan v. Walker*
    533 U.S. 167, 121 S. Ct. 2120, 150 L. Ed. 2d 251 (2001) ..................... 6

*Evans v. Chavis*
    546 U.S. 189, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006) ........................ 5

*Felder v. Johnson*
    204 F.3d 168 (5th Cir. 2000)........................................................... 13, 19

# TABLE OF AUTHORITIES
## (continued)

Page

*Felker v. Turpin*
  518 U.S. 651, 116 S. Ct. 2333, 135 L. Ed. 2d 827 (1996) ...................................................... 16

*Ferguson v. Palmateer*
  321 F.3d 820 (9th Cir. 2003).......................................................................................... 7, 10

*Flanders v. Graves*
  299 F.3d 974 (8th Cir. 2002)....................................................................... 13, 14, 17, 19

*Gandarela v. Johnson*
  286 F.3d 1080 (9th Cir. 2002)............................................................................................ 20

*Gibson v. Klinger*
  232 F.3d 799 (10th Cir. 2000)................................................................................. 14, 16, 19

*Graves v. Cockrell*
  343 F.3d 465 (5th Cir. 2003)............................................................................................. 18

*Green v. White*
  223 F.3d 1001 (9th Cir. 2000)..................................................................................... 7, 10, 16

*Hasan v. Galaza*
  254 F.3d 1150 (9th Cir. 2001)............................................................................................... 8

*Herrera v. Collins*
  506 U.S. 390, 113 S. Ct. 85, 122 L. Ed. 2d 203 (1993) ......................................... 11, 18

*House v. Bell*
  547 U.S. 518, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006) ........................................... 20

*Houston v. Lack*
  487 U.S. 266, 108 S. Ct. 2379, 101 L. Ed. 2d 245 (1988) ........................................ 2

*In re Clark*
  5 Cal. 4th 750, 855 P.2d 729 (1993) ...................................................................... 3, 18

*In re Crow*
  4 Cal. 3d 613, 483 P.2d 1206 (1971) ............................................................................. 4

*In re Robbins*
  18 Cal. 4th 770, 959 P.2d 311 (1998) ...................................................................... 3

*Johnson v. Knowles*
  541 F.3d 933 (9th Cir. 2008)........................................................................................... 12

iii

1

2

# TABLE OF AUTHORITIES
## (continued)

**Page**

3

*Lisker v. Knowles*
    463 F. Supp. 2d 1008 (C.D. Cal. 2006)........................................................ passim

4

5

*Majoy v. Roe*
    296 F.3d 770 (9th Cir. 2002)..................................................................... passim

6

7

*Morgan v. Martels*
    2009 U.S. Dist. LEXIS 74315 (E.D. Cal. Aug. 20, 2009) ...................... 9

8

9

*Pace v. DiGuglielmo*
    544 U.S. 408, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005) ..................... 21

10

*People v. Clark*
    3 Cal. 4th 41, 833 P.2d 561 (1992) ........................................................ 3

11

12

*People v. Duvall*
    9 Cal. 4th 464, 886 P.2d 1252 (1995) .................................................... 4

13

*People v. Mattson*
    51 Cal. 2d 777, 336 P.2d 937 (1959) ..................................................... 3

14

15

*People v. Superior Court (Romero)*
    13 Cal. 4th 497, 917 P.2d 628 (1996) .................................................... 2

16

17

*Rasberry v. Garcia*
    448 F.3d 1150 (9th Cir. 2006)................................................................ 17

18

19

*Schlup v. Delo*
    513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995) ...................... passim

20

*Shumway v. Payne*
    223 F.3d 982 (9th Cir. 2000)................................................................... 20

21

22

*Smith v. Duncan*
    297 F.3d 809 (9th Cir. 2002)................................................................... 5

23

24

*Souter v. Sheila*
    395 F.3d 577 (6th Cir. 2005).................................................................. passim

25

*Stillman v. Lamarque*
    319 F.3d 1199 (9th Cir. 2003).................................................................. 2

26

27

*United States v. Zuno-Arce*
    339 F.3d 886 (9th Cir. 2003)................................................................... 12

28

1

2

## TABLE OF AUTHORITIES
### (continued)

Page

3

*Waldrip v. Hall*

4
   548 F.3d 729 (9th Cir. 2008)................................................................. 6

5

*Welch v. Carey*
   350 F.3d 1079 (9th Cir. 2003)............................................................. 21

6

STATUTES

7

8
28 U.S.C. § 2244 ...................................................................... 5, 6, 9

9
28 U.S.C. § 2254 ............................................................................ 12

10
28 U.S.C. § 2255 ............................................................................ 12

11
Cal. Penal Code
   § 245......................................................................................... 2

12
   § 273.5...................................................................................... 2
   § 667......................................................................................... 2

13
   § 4800...................................................................................... 18

14
CONSTITUTIONAL PROVISIONS

15
Cal. Const., Article V, § 8(a) ............................................................. 18

16
COURT RULES

17
Cal. R. Ct. 8.308(a) ........................................................................... 6

18
Cal. R. Ct. 7-15 ................................................................................. 1

19

20

21

22

23

24

25

26

27

28

1    Respondent, George Neotti, Warden of the Richard J. Donovan Correctional

2  Facility in San Diego, California, hereby files this Motion to Dismiss the Petition

3  for Writ of Habeas Corpus filed herein.  The Petition is untimely under the

4  Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  28 U.S.C. §

5  2244(d).

6    Pursuant to Local Rule 7-15, Respondent waives oral argument as to this

7  motion.

8

9  Dated:  May 6, 2010                          Respectfully submitted,

10                                               EDMUND G. BROWN JR.
                                                 Attorney General of California
11                                               DANE R. GILLETTE
                                                 Chief Assistant Attorney General
12                                               PAMELA C. HAMANAKA
                                                 Senior Assistant Attorney General
13                                               KENNETH C. BYRNE
                                                 Supervising Deputy Attorney General
14

15                                               /s/ David Zarmi
                                                 DAVID ZARMI
16                                               Deputy Attorney General
17                                               *Attorneys for Respondent*

18

19

20

21

22

23

24

25

26

27

28

1

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## PROCEDURAL HISTORY

3      On April 10, 1995, in Los Angeles County Superior Court (case no.

4  MA00923), a jury found Petitioner guilty of corporal injury to a spouse, Cal. Penal

5  Code § 273.5(a), and assault with great bodily injury and a deadly weapon, Cal.

6  Penal Code § 245(a)(1).  Petitioner admitted two prior serious or violent felony

7  convictions.  On August 23, 1995, Petitioner was sentenced to a term of twenty-five

8  years to life in state prison as a Third Strike under California Penal Code section

9  667(b)-(i).  (LD 2.)[1]

10      Petitioner appealed his conviction (case no. B104297), and in an opinion filed

11  on June 3, 1997, the California Court of Appeal remanded for resentencing under

12  the newly published *People v. Superior Court (Romero)*, 13 Cal. 4th 497, 917 P.2d

13  628 (1996), which held that Three Strikes sentencing is discretionary in some cases.

14  (LD 3, 6.)  The People of the State of California filed a petition for rehearing, which

15  was denied on July 1, 1997.  (LD 7, 8.)

16      On November 25, 1997, the Los Angeles County Superior Court resentenced

17  Petitioner to a term of twenty-five years to life in state prison.  (LD 9.)  Petitioner

18  appealed his resentencing (case no. B119513), and the California Court of Appeal

19  affirmed the resentencing in an opinion filed on June 30, 1998.  (LD 10, 13.)

20  Petitioner filed a petition for review with the California Supreme Court (case no.

21  S073047), which was denied without discussion or citation to authority on October

22  14, 1998.  (LD 14, 15.)

23      On July 22, 1998, Petitioner constructively[2] filed a petition for writ of habeas

24  corpus in the California Court of Appeal (case no. B124093), which was "stricken"

25           [1] "LD" refers to the lodged documents, as indexed in the Notice of Lodging.

         [2] Respondent will assume, without conceding, that each of the state petitions was

26  delivered to prison authorities for mailing on the date it was verified or the date of proof of

service, if any.  *See Houston v. Lack*, 487 U.S. 266, 276, 108 S. Ct. 2379, 101 L. Ed. 2d 245

27  (1988); *see also Stillman v. Lamarque*, 319 F.3d 1199, 1201 (9th Cir. 2003) (to benefit from the

"mailbox rule" a petitioner must be proceeding without the assistance of counsel, and moreover

28  (continued…)

1   pursuant to *People v. Clark*, 3 Cal. 4th 41, 173, 833 P.2d 561 (1992), and *People v.*

2   *Mattson*, 51 Cal. 2d 777, 798, 336 P.2d 937 (1959), on July 29, 1998.  (LD 16, 17.)

3       On October 14, 1999, Petitioner filed a petition for writ of habeas corpus in

4   this Court (case no. CV 99-10639-CM (MC)), which was dismissed without

5   prejudice on May 22, 2000.

6       On January 5, 2000, Petitioner constructively filed a petition for writ of habeas

7   corpus in the Los Angeles County Superior Court, which was denied without

8   discussion or citation to authority on January 19, 2000.  (LD 18, 19.)

9       On May 28, 2000, Petitioner constructively filed a petition for writ of habeas

10  corpus in the California Court of Appeal (case no. B141846), which was denied

11  without discussion or citation to authority on June 14, 2000.  (LD 20, 21.)

12      Also on May 28, 2000, Petitioner constructively filed a second petition for

13  writ of habeas corpus in the California Court of Appeal (case no. B141877), which

14  was denied without discussion or citation to authority on June 15, 2000.  (LD 22,

15  23.)

16      On July 18, 2000, Petitioner constructively filed a petition for writ of habeas

17  corpus in the California Supreme Court (case no. S090130), which was denied

18  without discussion or citation to authority on November 29, 2000.  (LD 24, 25.)

19      On October 16, 2001, Petitioner constructively filed a second petition for writ

20  of habeas corpus in the California Supreme Court (case no. S101582).  (LD 26.)

21  On April 16, 2002, Petitioner constructively filed a supplemental petition.  (LD 27.)

22  The petition was denied on May 1, 2002, with citation to *In re Clark*, 5 Cal. 4th

23  750, 855 P.2d 729 (1993), and *In re Robbins*, 18 Cal. 4th 770, 780, 959 P.2d 311

24  (1998).  (LD 28.)

25

26  _____

    (…continued)

27  must deliver the petition to prison authorities for forwarding to the court within the limitations
    period).

28

1      On May 2, 2006, Petitioner constructively filed a second petition for writ of

2  habeas corpus in the Los Angeles County Superior Court, which was denied on

3  August 1, 2006, for failure to show a prima facie case for relief, with citation to *In*

4  *re Crow*, 4 Cal. 3d 613, 624, 483 P.2d 1206 (1971).  (LD 29, 30.)

5      On May 14, 2008, Petitioner constructively filed a third petition for writ of

6  habeas corpus in the Los Angeles County Superior Court, which was denied on

7  August 12, 2008, for failure to show a prima facie case for relief, with citation to

8  *People v. Duvall*, 9 Cal. 4th 464, 886 P.2d 1252 (1995).  (LD 31, 32.)

9      On September 23, 2008, Petitioner constructively filed a third petition for writ

10  of habeas corpus in the California Court of Appeal (case no. B210949), which was

11  denied without discussion or citation to authority on October 9, 2008.  (LD 33, 34.)

12      On April 5, 2009, Petitioner constructively filed a third petition for writ of

13  habeas corpus in the California Supreme Court (case no. S172035), which was

14  denied without discussion or citation to authority on September 9, 2009.  (LD 35,

15  36.)

16      The Petition in the instant case was filed on November 18, 2009.  (Pet. at 1.)[3]

17

18

19

20

21

22

23

24

25

---

26      [3] Although Petitioner dated his signed verification November 24, 2009 (Pet. at 6), that is
obviously incorrect, as the Petition was date-stamped November 18, 2009, by the clerk of the

27  Court.  Respondent uses this Court's page numbers when referring to the Petition due to the
Petition's composite nature and confusing pagination.

28

**ARGUMENT**

**I.     THE PETITION SHOULD BE DISMISSED BECAUSE IT IS TIME-BARRED BY THE ONE-YEAR PERIOD OF LIMITATION SET FORTH IN 28 U.S.C. § 2244(D)**

The Petition is time-barred under the AEDPA's one-year statute of limitation. *See* 28 U.S.C. § 2244(d).[4]  Additionally, Petitioner is not entitled to a later start date due to allegedly newly discovered evidence.

**A.     The Petition Is Time-Barred, Even With the Benefit of Tolling for one of the Habeas Petitions Filed in State Court**

The Petition is time-barred under the one-year period of limitation for filing federal habeas corpus petitions enacted as part of the AEDPA.  Under the AEDPA, a state prisoner ordinarily has one year from the date his conviction becomes final to file a federal habeas corpus petition.  § 2244(d)(1)(A).  The AEDPA limitation period "encourag[es] prompt filings in federal court in order to protect the federal system from being forced to hear stale claims."  *Carey v. Saffold*, 536 U.S. 214, 226, 122 S. Ct. 2134, 153 L. Ed. 2d 260 (2002).

The period of limitation is tolled while a properly filed state post-conviction petition is pending.  § 2244(d)(2).  However, the petitioner has the burden of demonstrating that the limitation period was sufficiently tolled.  *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002).  In *Carey*, the United States Supreme Court held that the time during which a state application is "pending" includes the period between a lower court's denial of relief and filing in a higher court, provided that the filing in the higher court is timely under state law.  *Carey*, 536 U.S. at 222-23; *see also Evans v. Chavis*, 546 U.S. 189, 191-92, 201, 126 S. Ct. 846, 163 L. Ed. 2d 684 (2006) (no interval or "gap" tolling permitted where there was at least six months of unjustified delay between the California Court of Appeal's denial of habeas relief and the filing of a habeas petition in the California Supreme Court, as

---

[4] All further statutory references will be to Title 28 of the United States Code.

1  unexplained delay of this magnitude does not fall within the scope of the federal

2  statutory word "pending," and discussing the deadlines typically imposed by most

3  States with determinate time limits for filing a notice of appeal, "such as 30 or 60

4  days").

5      Here, Petitioner's petition for review on direct appeal in the California

6  Supreme Court was denied on October 14, 1998.  (LD 15.)  His conviction became

7  final ninety days later, on January 12, 1999, upon the expiration of the period

8  during which certiorari could have been sought in the United States Supreme Court.

9  *Bowen v. Roe*, 188 F.3d 1157, 1159 (9th Cir. 1999).  The statute of limitations was

10  tolled for fourteen days from January 5, 2000, through January 19, 2000, while his

11  Los Angeles County Superior Court habeas petition was pending.  (LD 18, 19.)[5]

12  Thus, Petitioner had until January 26, 2000, to timely seek federal habeas relief,

13  379 days from the date that his conviction became final.  Instead, Petitioner filed

14  the Petition almost *ten years* after the statute of limitations expired, on November

15  18, 2009.  (Pet. at 1.)

16      Petitioner herein is not entitled to gap tolling for the period between the denial

17  of his Los Angeles County Superior Court habeas petition on January 19, 2000, and

18  the (constructive) filing of his next petition in the California Court of Appeal on

19  May 28, 2000, as he engaged in unexplained delay for over four months (129 days).

20  (LD 19, 20.)  This period exceeds the time allowed by California law for the filing

21  of a notice of appeal in a criminal proceeding, which is sixty days, and exceeds the

22  period that the Ninth Circuit has explicitly found too long for statutory tolling,

23  which is 101 days.  Cal. R. Ct. 8.308(a); *see Chaffer v. Prosper*, 592 F.3d 1046,

---

24  [5] Petitioner is plainly not entitled to tolling for his state habeas petition in case number
B124093, which was denied on July 29, 1998, almost six months prior to the commencement of
25  the statute of limitations.  *See Waldrip v. Hall*, 548 F.3d 729, 735 (9th Cir. 2008) (state habeas
petition which was denied before statute of limitation had started to run had no tolling effect).
26  Petitioner was also not entitled to tolling for his prior federal habeas petition in case number CV
99-10639-CM (MC).  *See Duncan v. Walker*, 533 U.S. 167, 172, 121 S. Ct. 2120, 150 L. Ed. 2d
27  251 (2001) (a federal application for habeas corpus relief does not statutorily toll the limitations
period pursuant to § 2244(d)(2)).

28

1  1048 (9th Cir. 2010) (unexplained delays of more than sixty days in a state like

2  California precludes gap tolling, rejecting statutory tolling for unjustified delays of

3  101 and 115 days between the denial of one state court petition and the filing of a

4  subsequent petition, as those periods, "were substantially longer than the '30 to 60

5  days' that 'most States' allow for filing petitions" (quoting *Evans*, 546 U.S. at

6  201)).

7      Even assuming arguendo that this Court does not follow *Chaffer*, and

8  Petitioner receives gap tolling for the entire period that he filed ascending habeas

9  petitions in the California courts, the Petition is still untimely.  Under this scenario,

10  the statute of limitations was tolled for 329 days from January 5, 2000, when he

11  constructively filed his Los Angeles County Superior Court habeas petition,

12  through November 29, 2000, when his California Supreme Court habeas petition

13  was denied.  (LD 18, 25.)  Thus, Petitioner had until December 6, 2000, to timely

14  seek federal habeas relief, 694 days from the date that his conviction became final.

15  Instead, Petitioner filed the Petition almost *nine years* after the statute of limitations

16  expired, on November 18, 2009.  (Pet. at 1.)

17      Furthermore, the statute of limitations was not tolled by his subsequent habeas

18  petitions, as the statute of limitations had expired.  *See Ferguson v. Palmateer*, 321

19  F.3d 820, 823 (9th Cir. 2003) (§ 2244(d) does not permit the reinitiation of the

20  limitations period that ended before a state petition is filed); *Green v. White*, 223

21  F.3d 1001, 1003 (9th Cir. 2000) (in a case where the one-year period of limitation

22  expired on April 23, 1997, state habeas petition filed on June 2, 1997, did not toll

23  the period of limitation "because the limitations period had already run").

24  **B.    Petitioner Is Not Entitled to a Later Start Date for the Statute of**
   **Limitations**
25

26      Petitioner contends that he is entitled to a later start date for the statute of

27  limitations, as he was not aware of the basis of his claim until September 3, 2007,

28  when Sharon Williamson admitted to fighting with the victim on the same day that

1    Petitioner fought with the victim.  (Pet. at 5, 14.)  However, contrary to Petitioner's

2    claim, the evidence was discoverable through the exercise of due diligence at the

3    time of trial in 1995, or at any time thereafter; the Petition is untimely with a

4    September 3, 2007, start date, regardless.

5         Under the AEDPA, the one-year period of limitation may run from the date on

6    which the factual predicate of a claim presented could have been discovered

7    through the exercise of due diligence.  § 2244(d)(1)(D).  Under section

8    2244(d)(1)(D), "[t]ime begins when the prisoner knows (or through diligence could

9    discover) the important facts, not when the prisoner recognizes their legal

10   significance."  *Hasan v. Galaza* 254 F.3d 1150, 1154 n.3 (9th Cir. 2001).  Petitioner

11   bears the burden of establishing the requisite due diligence to trigger section

12   2244(d)(1)(D).  *Majoy v. Roe*, 296 F.3d 770, 776 n.3 (9th Cir. 2002).

13        Here, Petitioner states that the "newly discovered evidence" was that

14   Williamson was available to testify at trial that she fought with Sheila Jones,

15   Petitioner's wife, on the day that Petitioner was seen beating his wife, contrary to

16   defense counsel's assertion that Williamson was not available to testify in court

17   because she was hospitalized.  (Pet. at 14, 17.)  Williamson, in her affidavit, states

18   that she was available for interview in the hospital, but that nobody came to

19   interview her.  (Pet. at 34-36.)  However, even if this Court accepts Williamson's

20   affidavit at face value, Petitioner always knew that Williamson could testify that

21   she caused Sheila's injuries because according to the defense theory he was present

22   when Sheila allegedly attacked Williamson, and actually broke up the fight.  (Pet. at

23   20, 33-34; 1RT 134-35.)

24        Regardless of any ineffective assistance of counsel claims that could have

25   been brought in the 1990's, Petitioner has not shown that he did anything to contact

26   Williamson for twelve years after his conviction.[6]  Petitioner was aware that

---

[6] Petitioner was convicted in 1995; he sent an investigator to speak to Williamson and take her affidavit in 2007.  (LD 2; Pet. at 14.)  Without further explanation, Petitioner states that

(continued…)

1    Williamson did not testify at trial and he was aware that her testimony was

2    potentially helpful to corroborate the defense theory offered at trial in Sheila's

3    testimony,[7] the two "newly discovered" facts that Petitioner claims were first

4    discovered by him in 2007.  Not only were both facts actually known by Petitioner

5    at the time of trial, but he has not shown the due diligence required for a claim

6    under section 2244(d)(1)(D).  "[P]etitioner has not, and cannot, meet his burden of

7    demonstrating he exercised due diligence in discovering the factual predicate of his

8    ineffective assistance of counsel claim . . . .   [P]etitioner offers absolutely no

9    reason why he did not attempt to obtain the 'new' declaration[] from [Williamson]

10   much earlier than he did."  *Alcox v. Hartley*, 614 F. Supp. 2d 1064, 1071 (C.D. Cal.

11   2009).  Thus, Petitioner is not entitled to a later start date for the statute of

12   limitations under the AEDPA.

13        Even if this Court were to grant Petitioner a September 3, 2007, start date for

14   the statute of limitations, the Petition is untimely.  The first petition Petitioner filed

15   with a California state court after September 3, 2007, was his Los Angeles County

16   Superior Court habeas petition filed on May 14, 2008, 254 days later.  (LD 30.)

17   That petition was denied on August 12, 2008.  (LD 32.)  His next petition was filed

18   with the California Court of Appeal on September 23, 2008, denied on October 9,

19   2008.  (LD 33, 34.)  Assuming "gap" tolling between the successive habeas

20   petitions (with forty-two days between the denial of the first and the filing of the

21   second), the statute of limitations was tolled 148 days.  *Carey*, 536 U.S. at 222-23.

22   Thus, even with the later start date, Petitioner had until April 5, 2009, to timely

23   seek federal habeas relief, 513 days from the date that Williamson submitted her

24   declaration.  *See Morgan v. Martels*, 2009 U.S. Dist. LEXIS 74315 (E.D. Cal. Aug.

25   _____

26   (…continued)
     his family first hired an investigator in 2007.  (Pet. at 13-14.)

27        [7] *But see* below, Argument section C(5) (Williamson's testimony does not actually aid
     Petitioner).

28

9

20, 2009).  Instead, Petitioner filed the Petition over seven months later, on November 18, 2009.  (Pet. at 1.)

Additionally, as discussed above, in Section A, the statute of limitations was not tolled by Petitioner's subsequent California Supreme Court habeas petition, as the statute of limitations had already expired.  *See Ferguson*, 321 F.3d at 823; *Green*, 223 F.3d at 1003.

### C. There Is No Actual Innocence Exception to the Statute of Limitations; But Even If There Were, Petitioner Has Failed to Make the Requisite Showing of Actual Innocence

Petitioner also seems to contend that the instant Petition is not barred by the statute of limitations because he is "actually innocent" of the crimes for which he was convicted.  (Pet. at 3, 12.)  This argument should be rejected because: (1) actual innocence is not an exception to the AEDPA statute of limitations; and, (2) in any case, Petitioner has failed to make the requisite factual showing of actual innocence.

### 1. Actual Innocence is not an Exception to the AEDPA Statute of Limitations

Actual innocence is not an exception to the AEDPA limitation period.  At the outset, it is important to consider the narrow scope of this issue.  It arises only when a petitioner claims to be actually innocent, has allowed the AEDPA limitation period to expire, and is not entitled to statutory or equitable tolling for any other independent reason.

Therefore, the question is whether a petitioner deserves an exception to the AEDPA limitation period when he claims to be actually innocent, but did nothing about his federal habeas claims for more than a year after his state court conviction became final.  As discussed below, other federal courts of appeals have split on the issue of whether actual innocence is an exception to the AEDPA limitation period.  Most of them have held that there is no such exception.  The Ninth Circuit has not squarely addressed this issue.

The conclusion that there is no actual innocence exception to the statute of limitations is justified by statutory and constitutional analysis.  Moreover, there are strong prudential reasons for it.  Almost no petitioner who is actually innocent would choose to remain silent about his federal habeas claims for more than a year.  Rather, he has a powerful and natural incentive to seek help from the courts as soon as possible.  On the other hand, every petitioner who allows the limitation period to lapse has an incentive to *allege* he is actually innocent.  *See Herrera v. Collins*, 506 U.S. 390, 423, 113 S. Ct. 85, 122 L. Ed. 2d 203 (1993) (O'Connor, J., concurring) (post-trial claims of actual innocence "are not uncommon," are "an unfortunate although understandable occurrence," and courts should "treat[] [them] with a fair degree of skepticism").  If federal courts are required to litigate each of these actual innocence allegations as an exception to the AEDPA limitation period, then the purpose of that limitation period will be completely undermined.

Although actual innocence is an exception to a procedural bar, actual innocence cannot be a freestanding claim on habeas corpus in a non-capital case.  *Coley v. Gonzales*, 55 F.3d 1385, 1387 (9th Cir. 1995) ("claim [of actual innocence] alone is not reviewable on habeas"); *see Herrera*, 506 U.S. at 400-04.  Therefore, a non-capital habeas petitioner must present a constitutional claim that entitles him or her to relief, quite apart from any assertion of actual innocence.  The issue in this case is whether an actual innocence allegation is an exception to the AEDPA limitation period, which will allow Petitioner to present those independent claims.

In *Majoy*, 296 F.3d at 776-77, the Ninth Circuit left open the question of whether actual innocence is an exception to the AEDPA limitation period.  It cited dicta from several other courts of appeals, which stated that this was a serious constitutional question, and district court dictum suggesting that, if there were no such exception, this would likely be a due process violation or an improper suspension of habeas corpus.  *Id.*

More recently, in *Johnson v. Knowles*, 541 F.3d 933 (9th Cir. 2008), the Ninth Circuit rejected a petitioner's claim that, despite his admission of guilt, the untimeliness of a federal habeas petition should be excused under the exception set forth in *Schlup v. Delo*, 513 U.S. 298, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995), because the petitioner was allegedly being unfairly held in prison longer than he should have been due to his attorneys' conflict of interest and the improper revocation of his plea agreement.  In so holding, the court noted that "the miscarriage of justice exception is limited to those *extraordinary* cases where the petitioner asserts his innocence and establishes that the court cannot have confidence in the contrary finding of guilt." *Johnson*, 541 F.3d at 937 (emphasis in original).  However, the Ninth Circuit did not squarely hold that a miscarriage of justice exception applies to the AEDPA statute of limitations bar where a petitioner asserts that he is factually innocent of the underlying offense and establishes that the court cannot have confidence in the contrary finding of guilt.  Instead, the court merely found that the petitioner in that case had asserted only procedural violations and failed to claim actual innocence, which failed to meet the *Schlup* standard.  *Id.*[8]

### 2.    The Majority of Circuits Have Held That Actual Innocence Is Not an Exception to the Statute of Limitations

Several federal courts of appeals have held that, if there is no other basis for equitable tolling, actual innocence is *not an exception* to the AEDPA limitation period.  *See Araujo v. Chandler*, 435 F.3d 678, 681-82 (7th Cir. 2005); *David v. Hall*, 318 F.3d 343, 346-47 (1st Cir. 2003); *Cousin v. Lensing*, 310 F.3d 843, 849

---

[8] Respondent respectfully submits that the Ninth Circuit's observation regarding the possibility of an "actual innocence" claim's ability to remove an untimeliness bar a in *United States v. Zuno-Arce*, 339 F.3d 886, 890 n.5 (9th Cir. 2003), which considered the denial of a motion under § 2255 rather than a petition under § 2254, was dicta.  The court stated that it did not need to address the actual innocence claim in that case because the petitioner was not entitled to relief, regardless.  Moreover, *Zuno-Arce* merely cited as authority footnote 1 of *Majoy*, where the Ninth Circuit noted that a claim that a petitioner should pass through the *Schlup* gateway is not in itself a constitutional claim.

1   (5th Cir. 2002); *Flanders v. Graves*, 299 F.3d 974, 976-78 (8th Cir. 2002); *Felder*

2   *v. Johnson*, 204 F.3d 168, 170-71 (5th Cir. 2000).

3       In *David*, the First Circuit rejected the argument that the AEDPA would be an

4   unconstitutional suspension of the writ of habeas corpus if there were no actual

5   innocence exception.  It explained that the petitioner "had ample time after AEDPA

6   in which to bring his claim within the statutory deadline.  In these circumstances,

7   the limitation is not even arguably unconstitutional." *David*, 318 F.3d at 347.  The

8   First Circuit stressed that the petitioner would have been entitled to an alternative

9   starting date if the factual predicate for his claim "came to light only after the

10  limitations period had expired." *Id.*

11      Moreover, Congress "clearly knew how to provide such an [actual innocence]

12  escape hatch" from the limitation period if that is what it intended. *David*, 318 F.3d

13  at 347.  In particular, "Congress adopted a form of [the] actual innocence test as one

14  component of" the exception to the successive petition bar.  But that exception only

15  applies if the petitioner could not have discovered the factual predicate of his claim

16  "through the exercise of due diligence." *Id.* at 347 n.5 (citing § 2244(b)(2)(B)).

17      The First Circuit emphasized "the strong public interest in the prompt

18  assertion of habeas claims."  Although the state is "[n]ormally . . . free to retry the

19  petitioner" whose habeas petition has been granted, "this becomes increasingly hard

20  to do as memories fade, evidence disperses and witnesses disappear." *David*, 318

21  F.3d at 347.  Moreover, a petitioner who exercised due diligence "is at least a

22  sympathetic figure," but a petitioner "who has a known claim, defers presenting it,

23  and then asks to be excused for the delay is unlikely to get cut much slack." *Id.*

24      Similarly, the Eighth Circuit held in *Flanders* that the AEDPA did not contain

25  any actual innocence exception for the limitations period.  The court rejected the

26  petitioner's analogy that actual innocence is an exception to the procedural default

27  doctrine.  The court found that, unlike the procedural default doctrine, which was

28  created by the courts in the first place, the AEDPA was a statute enacted by

1   Congress.  The Eighth Circuit acknowledged that, "in some cases," courts have

2   interpreted statutes to include equitable tolling even when the statutes did not

3   expressly provide for that.  "Normally, though, . . . equitable tolling applies only

4   when . . ." the opposing party "caused a plaintiff to be late in filing, or when other

5   circumstances, external to the plaintiff and *not attributable to his actions*, are

6   responsible for the delay."  *Flanders*, 299 F.3d at 977 (emphasis added).

7       The *Flanders* court concluded that it "would take the equitable tolling doctrine

8   far from its original and legitimate rationale," if it created a separate actual

9   innocence exception to the limitations period.  *Flanders*, 299 F.3d at 977.  The

10  court explained that actual innocence would be a relevant component of an

11  exception to the limitations period, if the petitioner could also show he acted with

12  due diligence, or the respondent prevented him from timely filing the petition.  *Id.*

13  at 978.

14          ### 3.    The Minority Rule

15      Contrary to the authority discussed above, a few courts have held there is an

16  actual innocence exception to the AEDPA's statute of limitations.  *See Souter v.*

17  *Sheila*, 395 F.3d 577, 601-02 (6th Cir. 2005); *Gibson v. Klinger*, 232 F.3d 799, 808

18  (10th Cir. 2000); *Lisker v. Knowles*, 463 F. Supp. 2d 1008, 1032-38 (C.D. Cal.

19  2006).

20      In *Souter*, 395 F.3d at 597-601, the Sixth Circuit noted that after Congress

21  passed the AEDPA, courts of appeals continued to apply the "actual innocence

22  exception to . . . other types of procedural default."  *Id.* at 599.  *Souter* then

23  acknowledged, "Of course, *these procedural limitations existed prior to AEDPA,*

24  and therefore Congress, which did not address them in the statute, did not alter the

25  application of the *Schlup* actual innocence exception to them.  By contrast,

26  AEDPA's limitations provisions were *an entirely new legislative creation*. . . ."  *Id.*

27  (emphasis added).

28

1    The Sixth Circuit then compared the AEDPA's limitations period to the

2 limitations period in various states.  It reasoned that, when a petitioner "default[s]

3 on his federal claims in state court by failing to file timely in [state] post-conviction

4 proceedings. . .," his claim is procedurally barred in federal court.  But that

5 procedural bar is subject to an actual innocence exception.  *Souter*, 395 F.3d at 599.

6 The court added, "five years prior to the enactment of a federal statute of

7 limitations, [this exception] was already well established. . . ."  *Id.*  The court

8 concluded, "[a]bsent evidence of Congress's contrary intent, there is no articulable

9 reason for treating habeas claims barred by the federal statute of limitations

10 differently."  *Id.*

11    The Sixth Circuit acknowledged that, according to the legislative history of the

12 AEDPA, the purpose of the statute was "to curb the abuse of the statutory writ of

13 habeas corpus, and to address *the acute problems of unnecessary delay and abuse*

14 in capital cases."  *Souter*, 395 F.3d at 599 (citation and internal quotation marks

15 omitted) (emphasis added).  But the court reasoned that creation of the actual

16 innocence exception "does not foster abuse and delay, but rather recognizes that in

17 extraordinary cases the societal interests of finality, comity, and conservation of

18 scarce judicial resources must yield to the imperative of correcting a fundamentally

19 unjust incarceration."  *Id.* at 599-600 (citation and internal quotation marks

20 omitted).

21    The court also reasoned that "no petitioner would forego filing . . ." a timely

22 petition under the AEDPA "if possible," and no petitioner would rely solely on an

23 actual innocence claim, because the petitioner would have to "meet a significantly

24 greater burden to pass through the gateway . . .," that is, he or she must

25 "demonstrate a credible claim of actual innocence . . ." first.  *Souter*, 395 F.3d at

26 600.  Quoting from the dicta of several courts of appeals and the holding of a

27 district court, the Sixth Circuit added that there would be a serious constitutional

28 issue if there were no actual innocence exception to the federal limitations period.

1    To avoid constitutional concerns, the court held there was an actual innocence

2    exception. *Id.* at 601-02.

3          In *Gibson*, the Tenth Circuit stated, without thoroughly analyzing the issue,

4    that equitable tolling of the AEDPA statute of limitations would be appropriate

5    when a prisoner is actually innocent. *Gibson*, 232 F.3d at 808.

6          In *Lisker*, the district court noted that neither the Supreme Court nor the Ninth

7    Circuit has decided whether "a showing of actual innocence tolls AEDPA's

8    limitations period." *Lisker*, 463 F. Supp. 2d at 1032. Only after determining that

9    the petitioner fell within the narrow class of cases implicating a fundamental

10   miscarriage of justice, did the *Lisker* court "wrestle with the question unanswered in

11   *Majoy*." *Id*. The *Lisker* court then listed the courts which held that a showing of

12   actual innocence did not toll the limitations period and observed that only one

13   court, the Sixth Circuit, had held that an actual innocence showing equitably tolled

14   the statute of limitations. *Id.* at 1033. The *Lisker* court agreed with the Sixth

15   Circuit and relied on the same reasoning. *Id.* at 1032-38.

16              **4.     The Majority Rule States the Better Position**

17         Respondent respectfully submits that the majority view should be followed,

18   and that *Souter*, *Gibson*, and *Lisker* were mistaken. As the First Circuit explained,

19   there is no serious constitutional issue at stake here, since every petitioner has

20   "ample time after AEDPA in which to bring his claim within the statutory

21   deadline." *David*, 318 F.3d at 347; *see Felker v. Turpin*, 518 U.S. 651, 664, 116 S.

22   Ct. 2333, 135 L. Ed. 2d 827 (1996) (the AEDPA's restrictions on successive

23   petitions do not amount to suspension of the writ, and judgments "about the proper

24   scope of the writ are normally for Congress to make."); *Green v. White* 223 F.3d

25   1001, 1003-04 (9th Cir. 2000) (AEDPA limitations period does not violate

26   Suspension Clause, because limitations period is subject to equitable tolling and

27   leaves "habeas petitioners with some reasonable opportunity to have their claims

28   heard on the merits.").

1      Moreover, although reviewing courts presume "that Congress legislates

2  against the background of existing jurisprudence," *Souter*, 395 F.3d at 598, the

3  Sixth Circuit acknowledged there was no such background regarding the specific

4  issue presented here, whether actual innocence is an exception to the AEDPA

5  limitations period. *Id.* at 599.

6      In addition, the analogy to the procedural default doctrine is severely flawed.

7  The purpose of the procedural default doctrine is to promote comity and federalism.

8  It simply does not matter that one of the state procedural defaults involves the

9  timeliness of a state petition.  When federal courts enforce that state procedural

10  default, they do so, not out of respect for the state's timeliness concerns, but out of

11  respect for *any* independent and adequate state ground.

12      In contrast, the very purpose of the AEDPA's limitations period is to prevent

13  abuse of the writ, including the rash of untimely federal petitions.  *Souter*, 395 F.3d

14  at 599.  Moreover, the procedural default doctrine was created by the courts.

15  Therefore, when courts create an exception to that doctrine, they are merely

16  refining their own rules.  *Flanders*, 299 F.3d at 977.  However, when courts create

17  new exceptions to federal statutes, they are intervening in another branch's affairs,

18  which is inappropriate absent a serious constitutional issue.

19      The analogy to equitable tolling is also faulty.  Equitable tolling arises when a

20  petitioner is prevented from filing a timely petition, due to extraordinary factors

21  *beyond his control*.  *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) (to

22  equitably toll AEDPA's one year statute of limitations, a petitioner must establish

23  two elements: (1) that he has been pursuing his rights diligently, and (2) that some

24  extraordinary circumstances stood in his way).  "The prisoner must show that the

25  extraordinary circumstances were the cause of his untimeliness." *Bryant v. Arizona*

26  *Attorney General*, 499 F.3d 1056, 1061 (9th Cir. 2007) (quoting *Spitsyn v. Moore*,

27  345 F.3d 796, 799 (9th Cir. 2003)).

28

1    In contrast, a petitioner who seeks an actual innocence exception due to his

2    own carelessness in allowing the limitations period to lapse has no such claim to the

3    court's sympathy.  That is precisely why the First Circuit found this analogy

4    unsound.  *David*, 318 F.3d at 347 & n.5.  Moreover, almost no petitioner who is

5    actually innocent, but who lacks a proper basis for equitable tolling, would refrain

6    from asserting his claim for a whole year and allow the limitations period to lapse.

7    Unlike any other petitioner, an actually innocent petitioner would be concentrating,

8    from the moment he arrived in prison, on how he could prove his innocence.  He

9    would have a powerful and intuitive incentive to file a timely petition.

10   Furthermore, even if a rare exception did arise, and the petitioner could prove

11   his actual innocence to the state courts, no rational state Governor would refuse to

12   pardon him.  Even if the gate to the federal courthouse is closed, a California

13   prisoner can still pursue appropriate remedies in state court (*Clark*, 5 Cal. 4th at

14   790, 796-97), and can also present his claim of actual innocence to the governor in

15   a request for executive clemency, which "is the historic remedy for preventing

16   miscarriages of justice where judicial process has been exhausted."  *Herrera*, 506

17   U.S. at 411-17, 421 (noting that "the historical mechanism" and the "fail safe"

18   method for obtaining relief on the ground of innocence based on new evidence that

19   is discovered too late to file a motion for new trial); *Graves v. Cockrell*, 343 F.3d

20   465, 473 (5th Cir. 2003) (disallowing federal claim of actual innocence if there are

21   state procedures for making the claim); *see generally* Cal. Const., Art. V, § 8(a);

22   Cal. Penal Code §§ 3045, 4800 et seq.

23   Respondent respectfully disagrees with the Sixth Circuit's reasoning, that the

24   creation of an actual innocence exception would not cause abuse and delay.  *See*

25   *Souter*, 395 F.3d at 599-600.  Petitioners file untimely federal petitions generally

26   because they are inattentive to the limitations period.  They usually do not ponder

27   the limitations period and consciously disregard it.  These untimely petitioners, who

28

18

carelessly allow their limitations period to lapse, will then seek any exception they can find to the limitations period.

Regardless of whether habeas petitioners are actually innocent, they will claim that they are, in order to circumvent the limitations period. They will not be deterred by their burden of proving actual innocence, because they will view actual innocence as their only chance of avoiding the limitations period. Courts will have to litigate *all claims* of actual innocence, even frivolous ones that ultimately fail. This will consume enormous judicial resources, which is precisely what Congress sought to avoid by enacting the AEDPA. Therefore, Respondent respectfully submits that *Souter*, *Gibson*, and *Lisker* were wrongly decided. Other cases discussed above, i.e., *David*, *Cousin*, *Flanders*, and *Felder*, correctly held there is no actual innocence exception to the AEDPA limitations period.

### 5. In Any Case, Petitioner Has Failed to Meet the *Schlup* Standard

As noted above, in *Majoy*, the Ninth Circuit declined to decide the issue of whether there is an actual innocence exception to the statute of limitations. Instead, the court remanded the matter to the district court with directions that it should first determine whether the petitioner had established a claim of actual innocence as defined under *Schlup*, and noted that if the district court found that he had done so then the Ninth Circuit would decide what consequence such a finding has with respect to the one-year statute of limitations. *Majoy*, 296 F.3d at 777-78. In this case, Respondent submits that Petitioner has failed to demonstrate that he is actually innocent even if there is an actual innocence exception to the AEDPA's statute of limitations.

In the procedural default context, the Supreme Court has held that prisoners asserting actual innocence as a gateway to defaulted claims must establish that, in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327.

Under *Schlup*, a credible claim of actual innocence requires the petitioner to "support his allegations with new *reliable* evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.  Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Id.* at 324 (italics added).

This standard is demanding and permits review only in the extraordinary case. *House v. Bell*, 547 U.S. 518, 538, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006).  Indeed, even the narrow scope of this stringent standard and the extreme rarity of the type of evidence required by *Schlup*, the allegation of actual innocence has been summarily rejected in virtually every case in which it has been made.  *See*, *e.g.*, *Calderon v. Thompson*, 523 U.S. 538, 559, 118 S. Ct. 1489, 140 L. Ed. 2d 728 (1998); *Shumway v. Payne*, 223 F.3d 982, 990 (9th Cir. 2000).

"Actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998).  Thus, to prevail on a claim of actual innocence, a petitioner must show that he "is actually innocent."  *Schlup*, 513 U.S. at 326-27.  Speculative and collateral impeachment, for example, falls far short of showing actual innocence.  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

In *Schlup*, the Supreme Court remanded the case to the district court so that the "court may consider how the timing of the submission and the likely credibility of the affiants bear on the probable reliability of that evidence." *Schlup*, 513 U.S. at 332.  "In short, the new evidence is not simply taken at face value; its reliability has to be tested."  *House*, 547 U.S. at 557.

In *Lisker*, 463 F. Supp. 2d 1008, the district court found that new evidence presented at an evidentiary hearing, including forensic evidence, "effectively dismantled the case the prosecution presented at trial."  *Lisker*, 463 F. Supp. 2d at 1018.  The court concluded that the *Schlup* standard had been met because it

1    retained "no confidence in the verdict achieved through the presentation of

2    evidence at Petitioner's trial because none of the evidence from that trial, upon

3    which the conviction rested, withstands scrutiny in light of the newly presented

4    evidence here." *Id.* at 1040.

5       Here, in sharp contrast to *Lisker*, Petitioner has failed to demonstrate that he is

6    actually innocent.  Petitioner submits that Williamson's affidavit shows that he is

7    innocent because Williamson was involved in a physical altercation with Sheila on

8    the date that Petitioner was found to have hit his wife.  (Pet. at 20-21.)  As an initial

9    matter, neither Petitioner nor anyone else cogently explains why this new evidence

10    was not proffered earlier than thirteen years after Petitioner's trial.[9]  Petitioner has

11    offered no reasonable explanation for his thirteen-year delay, and without that

12    explanation it is clear Petitioner has not been "pursuing his rights diligently."  *Pace*

13    *v. DiGuglielmo*, 544 U.S. 408, 417, 125 S. Ct. 1807, 161 L. Ed. 2d 669 (2005); *see*

14    *Welch v. Carey*, 350 F.3d 1079, 1083 (9th Cir. 2003) ("[t]olling accommodates

15    effort, not inaction"); *see generally* above, Section B.  Moreover, Petitioner has not

16    provided Williamson's personal testimony does not contravene the finding that

17    Petitioner hit Sheila, and Williamson's testimony as to what Sheila told her adds

18    nothing to Sheila's own testimony.

19       At trial, paramedics Antonia Soto and Matthew Crawford testified that they

20    responded to an assault call and found Petitioner beating Sheila in the street.

21    Petitioner stood on top of her and hit her every time she tried to get up.  (1RT 30-

22    32; 2RT 201.)  Crawford saw him kick her like "a football."  (2RT 215.)  Soto

23    watched Sheila "crawling like a child" trying to escape Petitioner.  (1RT 36.)  Soto

24    used a spotlight and the ambulance's headlights to get Petitioner's attention, but

25    Petitioner only paused in his attack.  (1RT 38-40.)  The area was well lit with

26

27         [9] Petitioner was convicted in 1995; he sent an investigator to speak to Williamson and take her affidavit in 2007; he first filed a state habeas petition with this claim in 2008.  (LD 2, 31;

28    Pet. at 14; *see generally* above, Section B.)

1  streetlights and Soto was able to clearly see Petitioner beating Sheila.  (1RT 41-42,

2  112.)

3      Los Angeles County Deputy Sheriff Gary Debondt testified that Sheila told

4  him that she had been arguing with her husband, and walked into the street holding

5  a glass container.  (1RT 90-91.)  Petitioner pushed her to the ground, shattering the

6  glass container and cutting her.  Then he repeatedly hit her upper torso and face.

7  (1RT 91.)

8      However, Sheila recanted her earlier statements to Deputy Debondt at trial and

9  said that she had lied; Petitioner never hit her.  (1RT 141-143, 171.)  Instead, she

10  was actually injured in a fight with Williamson, which Petitioner broke up.  (1RT

11  133-35.)

12      Thus, Petitioner's new evidence, Williamson's affidavit, does nothing to show

13  Petitioner's actual innocence.  Sheila testified in court that she lied, and any

14  statements she made to Williamson to that effect add nothing to the record.  The

15  jury did not find her credible.  More importantly, credible unrelated third party

16  paramedics testified that they actually witnessed Petitioner beating Sheila.

17  Williamson's written testimony that she fought with Sheila earlier that evening

18  does nothing to contravene the paramedics' testimony.  (*See* 1RT 135-39

19  (according to Sheila, her struggle with Petitioner in the street took place after her

20  fight with Williamson).)  Accordingly, it is *not* "more likely than not that no

21  reasonable juror would have found petitioner guilty beyond a reasonable doubt."

22  *Schlup*, 513 U.S. at 327.

23      Furthermore, despite Petitioner's statement that Williamson is a credible

24  witness (Pet. at 11), Petitioner admits that Williamson is his friend and Petitioner

25  was close enough with her that Sheila thought they were having an affair.  (Pet. at

26  13.)  Despite her friendship with Petitioner, they would have this Court believe that

27  she never came forward in twelve years to exonerate him.  (*See* above, Section B.)

28

22

1   Thus, Petitioner has not presented *credible* testimony to this Court to support his

2   claim of actual innocence.  *See Schlup*, 513 U.S. at 324, 332.

3       Accordingly, assuming arguendo that there is an actual innocence exception to

4   the statute of limitations, Petitioner has failed to meet the high standard required to

5   override the statute.  As explained above, the Petition should be dismissed for

6   untimeliness.

7                                **CONCLUSION**

8       Accordingly, Respondent requests this Court dismiss the Petition for Writ of

9   Habeas Corpus.

10

11  Dated:  May 6, 2010                          Respectfully submitted,

12                                               EDMUND G. BROWN JR.
                                                 Attorney General of California
13                                               DANE R. GILLETTE
                                                 Chief Assistant Attorney General
14                                               PAMELA C. HAMANAKA
                                                 Senior Assistant Attorney General
15                                               KENNETH C. BYRNE
                                                 Supervising Deputy Attorney General

16

17                                               /s/ David Zarmi
                                                 DAVID ZARMI
18                                               Deputy Attorney General
                                                 *Attorneys for Respondent*
19

20  LA2009508949
    60536108.doc

21

22

23

24

25

26

27

28

                                        23

## CERTIFICATE OF SERVICE

Case Name:   **Jones v. Neotti**                    No.   **CV 09-8819 JVS(JC)**

I hereby certify that on <u>May 7, 2010</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

MOTION TO DISMISS PETITION FOR WRIT OF HABEAS CORPUS; MEMORANDUM OF POINTS AND AUTHORITIES

Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.

I further certify that some of the participants in the case are not registered CM/ECF users.  On <u>May 7, 2010</u>, I have mailed the foregoing document(s) by First-Class Mail, postage prepaid, or have dispatched it to a third party commercial carrier for delivery within three (3) calendar days to the following non-CM/ECF participants:

Frank Eugene Jones
CDC # D-91162
KERN VALLEY STATE PRISON
AKA PERRY TALLEY - B-7- 128L
P.O. BOX 5102
DELANO, CA  93216

I declare under penalty of perjury under the laws of the State of California the foregoing is true and correct and that this declaration was executed on <u>May 7, 2010</u>, at Los Angeles, California.

_____                    _____
Mary Emami                                                  Signature
Declarant

60536422.doc